ROBERT E. ATKINSON, ESQ., Bar No. 9958
Email: robert@nv-lawfirm.com
**ATKINSON LAW ASSOCIATES LTD.**
376 E Warm Springs Rd, Suite 130
Las Vegas, NV 89119
Telephone: (702) 614-0600
*Attorney for Robert E. Atkinson, Trustee*

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No. 23-13680-mkn |
| | Chapter 7 |
| HEATH ROBERT WILLS and PATRICIA ANNE WILLS, | **MOTION TO APPROVE SETTLEMENT** |
| Debtors. | |

ROBERT E. ATKINSON ("***Trustee***" or "***Plaintiff***"), in his capacity as the chapter 7 trustee of the above-captioned bankruptcy estate (the "***Bankruptcy Estate***"), hereby moves this Court for an order approving a settlement agreement by and between: the Bankruptcy Estate, on the one hand; and FUNDING4DOCTORS LLC ("***Defendant***"), on the other hand.

This motion is based on: the Memorandum of Points and Authorities contained herein; the pleadings and papers on file in this case; the attached exhibit; the supporting Declaration of Robert E. Atkinson ("***Trustee's Decl.***") filed herewith; and any oral arguments made at the time of hearing on this matter.

DATED:  August 13, 2025                **ATKINSON LAW ASSOCIATES LTD.**

                                        By:  /s/ Robert E. Atkinson
                                            ROBERT E. ATKINSON, ESQ.
                                            Nevada Bar No. 9958
                                            *Attorney for Robert E. Atkinson, Trustee*

-1-

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. BACKGROUND FACTS

1. On August 29, 2023 ("**Petition Date**"), debtors HEATH ROBERT WILLS ("**Heath**") and PATRICIA ANNE WILLS ("**Patricia**") (collectively, as the "**Debtors**") filed a voluntary bankruptcy in the District of Nevada, commencing case 23-13680-mkn (the "**Bankruptcy Case**") and thereby creating the bankruptcy estate ("**Bankruptcy Estate**"). [ECF #1.][1]

2. The Debtors' Schedule A/B list of assets, as amended, states a specific scheduled asset as "Heath Wills PC – assets taken by receivership" ("**Heath Wills PC**") and that the Debtor's ownership is listed as "100% Heath Wills". [ECF #148.]

3. Pre-bankruptcy, Debtors owned 100% of a company called Bandar Enterprises LLC ("**Bandar**"). Bandar operated three clinical reference laboratories. [Trustee's Decl. at ¶ 5.]

4. Defendant was a lender to Bandar, and specifically provided multiple secured loans to Bandar, specifically it provided hundreds of thousands of dollars of secured loans to Bandar, and was granted a security interest in many medical liens/receivables as collateral (the "**Collateral**"). [Id. at ¶ 6.]

5. Prior to the Debtors' Bankruptcy Case, the Debtors and Bandar were parties to a Nevada state court litigation, case no. A-20-814263-B ("**Litigation**"). [Id. at ¶ 7.]

6. During the Litigation, Debtors failed to participate in the court ordered discovery and production requests, which resulted in the court appointing William M. Holland as the receiver ("**Receiver**"), thereby creating a receivership estate ("**Receivership Estate**"). [Id. at ¶ 8.]

7. On May 5, 2022, in the Litigation, the state court entered an order which authorized the Receiver to have control over all of the Debtors' assets and companies ("**Receivership Order**"). [Id. at ¶ 9.]

8. The Receivership Order specifically it provided hundreds of thousands of dollars of secured loans to Bandar, and was granted a security interest in many medical

---

[1] Docket entries in the main bankruptcy case are designated "ECF #___".  Docket entries in the adversary case are designated "Adv. ECF #___".

-2-

liens/receivables as collateral states that "the Receiver shall take possession of and receive access to and from any and all banks, savings and loan associations and/or any financial institutions as a signatory for any monies and funds on deposit in said banks, savings and loan associations and/or any financial institutions in the name of any and all entities within the Receivership Estate." [Id. at ¶ 10.]

9. On May 20, 2022, the Receiver took control of Bandar's bank accounts, and began authorizing payments for payroll and certain vendors. [Id. at ¶ 11.]

10. On May 30, 2022, the Receiver filed a status report in the Litigation, providing the inventory of companies subject to the Receivership Estate, which included Bandar and Heath Wills PC. [Id. at ¶ 12.]

11. Heath Wills PC had a Chase business bank account ending 3022 ("**Account 3022**"). [Id. at ¶ 13.]

12. Bank records for Account 3022 show that $20,000 was transferred to Defendant from Account 3022 (the "**Transfer**") after the Receivership Order had been entered. [Id. at ¶ 14.]

13. On April 24, 2024, an order was entered on the docket of the Bankruptcy Case approving a certain settlement between the Trustee and the Receiver ("**Settlement Order**"). [ECF #446.]

14. The Settlement Order states that between May 5, 2022 (i.e., the date of entry of the Receivership Order) and the Petition Date (the "**Pre-Petition Receivership Period**"), all unliquidated claims and causes of action that are held by the Receivership Estate shall be assigned to the Bankruptcy Estate, and become property of the Bankruptcy Estate. [Id. at ¶ 4.]

15. On November 7, 2024, the Trustee, as plaintiff on behalf of the Bankruptcy Estate, commenced an adversary proceeding against Defendant in the District of Nevada (adversary case no. 24-01151-mkn) (the "**AP Case**"), seeking turnover of the Transfer. [Adv. ECF #1.]

16. The Defendant has asserted various defenses in the AP Case, and has taken the position that the Transfer is not subject to turnover. [Trustee's Decl. at ¶ 17.]

17. Defendant has significant uncollected Collateral, payment of which apparently is available from insurers, and furthermore Defendant is of the opinion that the insurers are unwilling to remit on billed services because of the Receivership and the Bankruptcy Case. [Id. at ¶ 18.]

18. The Trustee and Defendant, having evaluated the strengths and weaknesses of their respective claims and defenses in the AP Case have agreed to settle and resolve the entire AP Case. The terms of the settlement between the parties have been memorialized in a written settlement agreement ("***Agreement***"), which is attached hereto as **EXHIBIT 1**.

## II.     TERMS OF THE SETTLEMENT

19. The Agreement is contingent upon Bankruptcy Court approval. A summary of the material terms of the Agreement is:

- ***Settlement Amount***. $20,000 shall be paid to the Bankruptcy Estate from collections on the Collateral. The $20,000 shall be unsecured property of the Bankruptcy Estate.

- ***Collections***. The Trustee shall send out letters on the Trustee's letterhead (which may be sent jointly with Defendant), and make demand on the insurers for payments on the Collateral. The Trustee shall keep the first $10,000 collected, and then 50% of the next $20,000 collected, for a total of $20,000 to the Bankruptcy Estate. All amounts collected in excess of that $20,000 shall be remitted to the Defendant, as its secured collateral.

- ***Dismissal of AP Case.*** Within five calendar days after the effective date of the Agreement, the Parties shall stipulate to a dismissal of the AP Case, in its entirety, with prejudice.

- ***Releases***. The parties agree to the releases found in Section 4 of the Agreement.

*See* **Exhibit 1**.

20. The foregoing is a summary of certain of the material terms of the settlement and is qualified in its entirety by the Agreement itself, which contains many terms.

## III.     LEGAL AUTHORITIES & ARGUMENT

21. Pursuant to Bankruptcy Rule 9019, the Court may approve a proposed settlement of a claim, after notice and a hearing. Fed. R. Bankr. P. 9019(a).

22. The Bankruptcy Court is afforded great latitude in approving settlement agreements. However, the Court's discretion is not unlimited; settlements must also be fair and equitable. Woodson v. Fireman's Fund Ins. Co. (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1988). Such

agreements must also be reasonable under the particular circumstances of the case, and in the estate's best interests. In re Mickey Thompson Entertainment Group, Inc., 292 B.R. 415, 420 (B.A.P. 9th Cir., 2003).

23. In reviewing proposed settlements, "courts need not rule upon disputed facts and questions of law, but rather only canvass the issues. A mini trial on the merits is not required." Burton v. Ulrich (In re Schmitt), 215 B.R. 417, 423 (9th Cir. B.A.P. 1997); see also In re Hyloft Inc., 451 B.R. 104, 109 (Bankr. D. Nev. 2011).

24. In deciding whether to approve a proposed settlement, the bankruptcy court must make an informed decision; the court must independently make a finding that the settlement is reasonable, fair and equitable. Hyloft at 109.

25. In determining whether a proposed settlement is fair and reasonable, the Court should consider the following four factors (each, an "**_A&C Factor_**"):

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.
>
> Martin v. Kane (In re A & C Properties), 784 F.2d 1377, 1381 (9th Cir. 1986); Woodson at 620; Mickey Thompson at 420.

26. Overall, the A&C Factors favor approval of the proposed settlement. Each factor is analyzed below.

**A. *Probability of Success in the Litigation***

27. The Trustee's $20,000 claim against Defendant, as plead in the AP Case complaint, is turnover of Receivership property, pursuant to NRS § 32.290(1)(b) and 11 U.S.C. § 542(a). Receiver claims (including claims for turnover) are now property of the bankruptcy estate, and turnover of estate property is a straightforward implementation of bankruptcy law.

28. The Trustee is confident in his cause of action, but acknowledges that the Defendant has certain defenses that might gain traction. Given the vagaries of litigation, the Trustee would expect a 90% chance of success on the AP Case.

29. However, the settlement allows for a 100% ($20,000) payment to the Estate, which is the most that the Trustee could collect from the AP Case. Accordingly, the first A&C Factor (probability of success in litigation) favors approval of the settlement

**B. Difficulties in Collection**

30. Defendant is domiciled in Delaware, and headquartered in Florida. It has no office in Nevada. If the Trustee were to obtain a judgment against Defendant, the Trustee would have to employ local Florida counsel and domesticate that judgment in Florida in order to execute on it. This would be relatively cumbersome for the Trustee, given the amount in dispute.

31. Accordingly, the second A&C Factor (difficulties in collection) favors approval of the settlement.

**C. Complexity, Expense, Delay, and Inconvenience of the Litigation**

32. Because the claim against Defendant are the Receiver's claims (as subsequently acquired by the Trustee), the case is moderately complex, requiring delving into Nevada state law on receiverships   Costs are a major factor: litigating this matter would rapidly result in a situation that is prohibitively expensive, relative to the amount in dispute, especially because the Trustee has no known statutory basis to recover his attorney fees.

33. Regarding delay, any trial or appeal would add many months to the administration of the estate.

34. All of these expenses and delays from ongoing litigation will be avoided by approval of the settlement. Accordingly, the third A&C Factor strongly favors approval of the settlement.

**D. Interests of the Creditors**

35. The proposed settlement is in the best interests of the creditors because it provides for a quick and reasonable return to creditors. If active litigation occurs and goes to trial, then the costs of litigating will go significantly higher, and even if the Trustee were to obtain a much higher settlement closer to trial, the net recovery to the unsecured creditors might be much worse than in comparison to the settlement, and would likely result in a net negative for the estate. This settlement therefore results in a quick, fair, and reasonable recovery for the creditors of the estate, factoring in the overall recovery, the relative costs associated with litigating this case outside of this settlement.

36. Accordingly, the fourth A&C Factor (interests of the creditors) favors settlement.

**E. Conclusion**

37. For the reasons stated above, the Trustee, in his business judgment: (i) asserts that he has made an informed decision in entering into the Agreement; (ii) believes that the settlement between the parties (as evidenced by the Agreement) is fair, equitable, and reasonable; and (iii) believes that approval of the Agreement is in the best interests of the Bankruptcy Estate and its creditors. [Trustee's Decl. at ¶ 19.]

### IV.  RELIEF REQUESTED

38. The Trustee respectfully requests that the Court approve the Agreement, pursuant to Bankruptcy Rule 9019, the A&C Factors, and other applicable law as discussed above.

# # # # #

DATED: August 13, 2025                    **ATKINSON LAW ASSOCIATES LTD.**

By: _____/s/ Robert E. Atkinson_____
ROBERT E. ATKINSON, ESQ.
Nevada Bar No. 9958
*Attorney for Robert E. Atkinson, Trustee*

# EXHIBIT 1

Final 080625

## SETTLEMENT AND MUTUAL RELEASE AGREEMENT

This Settlement and Mutual Release Agreement ("***Agreement***") is made and entered into by and between plaintiff ROBERT E. ATKINSON, in his capacity as chapter 7 trustee of the bankruptcy estate of debtors HEATH ROBERT WILLS and PATRICIA ANNE WILLS (Nevada bankruptcy case 23-13680-mkn) ("***Trustee***"), on the one hand, and defendant FUNDING4DOCTORS LLC, a limited liability company ("***Defendant***" or "***F4D***"), on the other hand. Each person or entity may hereinafter be referred to as a "***Party***," or collectively as the "***Parties***."

## RECITALS

WHEREAS, on August 29, 2023 ("***Petition Date***"), HEATH ROBERT WILLS ("***Heath***") and PATRICIA ANNE WILLS ("***Patricia***") (collectively, as the "***Debtors***") filed a voluntary bankruptcy in the District of Nevada, commencing case 23-13680-mkn (the "***Bankruptcy Case***") and thereby creating the bankruptcy estate ("***Bankruptcy Estate***"); and

WHEREAS, the Debtor's Schedule A/B list of assets, as amended, states a specific scheduled asset as "Heath Wills PC – assets taken by receivership" ("***Heath Wills PC***") and that the Debtor's ownership is listed as "100% Heath Wills"; and

WHEREAS, also on the Debtor's Schedule A/B list of assets, as amended states that the Debtors owned 100% of a company called 'Bandar Enterprises LLC' ("***Bandar***"); and

WHEREAS, Bandar operated three clinical reference laboratories, two located in Las Vegas, and the other in Vista, California; and

WHEREAS, Defendant provided multiple secured loans to Bandar, and was granted a security interest in medical liens/receivables as collateral (the "***Collateral***"); and

WHEREAS, prior to the Debtor's Bankruptcy Case, the Debtors and Bandar were parties to a Nevada state court litigation, case no. A-20-814263-B ("***Litigation***"); and

WHEREAS, during the Litigation, Debtors failed to participate in the court ordered discovery and production requests, which resulted in the court appointing William M. Holland as the Receiver ("***Receiver***"), thereby creating a receivership estate ("***Receivership Estate***"); and

WHEREAS, on May 5, 2022, the court entered an order which authorized the Receiver to have control over all of the Debtors' assets and companies ("***Receivership Order***"); and

WHEREAS, the Receivership Order further states that "the Receiver shall take possession of and receive access to and from any and all banks, savings and loan associations and/or any financial institutions as a signatory for any monies and funds on deposit in said banks, savings and loan associations and/or any financial institutions in the name of any and all entities within the Receivership Estate."; and

WHEREAS, on May 20, 2022, the Receiver took control of Bandar's bank accounts, and began authorizing payments for payroll and certain vendors; and



Settlement and Mutual Release Agreement | Page 1

Final 080625

WHEREAS, on May 30, 2022, the Receiver filed a status report in the Litigation, providing the inventory of companies subject to the Receivership Estate, which included Bandar and Heath Wills PC; and

WHEREAS, Heath Wills PC had a Chase business bank account ending 3022 ("***Account 3022***"); and

WHEREAS, bank records for Account 3022 show that $20,000 was transferred to Defendant from Account 3022 (the "***Transfer***") after the Receivership Order had been entered; and

WHEREAS, on April 24, 2024, an order was entered on the docket of the Bankruptcy Case approving a certain settlement between the Trustee and the Receiver ("***Settlement Order***"); and

WHEREAS, the Settlement Order states that between May 5, 2022 (i.e., the date of entry of the Receivership Order) and the Petition Date (the "***Pre-Petition Receivership Period***"), all unliquidated claims and causes of action that are held by the Receivership Estate shall be assigned to the Bankruptcy Estate, and become property of the Bankruptcy Estate; and

WHEREAS, on November 7, 2024, the Trustee, as plaintiff on behalf of the Bankruptcy Estate, commenced an adversary proceeding against Defendant in the District of Nevada (adversary case no. 24-01151-mkn) (the "***AP Case***"), seeking turnover of the Transfer;

WHEREAS, Defendant has asserted various defenses in the AP Case, and has taken the position that the Transfer is not subject to turnover; and

WHEREAS, Defendant has significant uncollected Collateral, payment of which apparently is available from insurers, and furthermore Defendant is of the opinion that the insurers are unwilling to remit on billed services because of the Receivership and the Bankruptcy Case; and

WHEREAS, Defendant has shared with the Trustee a spreadsheet of its uncollected Collateral, consisting of thousands of liens, and the associated insurers for each lien; and

WHEREAS, the Defendant has significant uncollected Collateral, and has shared with the Trustee a spreadsheet of thousands of uncollected liens and associated insurers; and

WHEREAS, the Parties are willing to settle the AP Case in full, on the terms contained herein;

NOW, THEREFORE, in consideration of the promises, covenants, warranties, and representations set forth herein, the Parties agree as follows:

Settlement and Mutual Release Agreement | Page 2



Final 080625

## TERMS OF THE AGREEMENT

1. **Contingent on Bankruptcy Court Approval**. The Parties acknowledge that this Agreement, and all obligations and releases contained herein, are contingent upon Bankruptcy Court approval. The Trustee shall prepare and file a motion to obtain such approval (the "***Motion to Approve***") within seven (7) business days of the Parties' full execution of this Agreement. If the Bankruptcy Court does not approve this Agreement or the Effective Date (as defined below) does not occur, then this Agreement, and all of the obligations and releases contained herein, shall be null and void.

2. **Effective Date**. The effective date of this Agreement (the "***Effective Date***") shall be the day that any order approving this agreement becomes a final non-appealable order (e.g., 15 days after entry of order, if no stay or appeal). All obligations and releases contained herein shall become effective only on the Effective Date. All Parties hereto agree not to appeal, or file a motion to stay, any order approving this Agreement.

3. **Consideration**. The Parties agree to $20,000 paid to the Bankruptcy Estate (the "***$20,000 Cap***") from collections on the liens, as follows:

    (a) ***Collections; Split of Collateral.***

    - Defendant (F4D) shall promptly prepare draft letters to each insurer for the Collateral, identifying the liens for which each insurer is believed to be the payment obligor. The draft letters shall demand payment from each insurer. F4D shall provide the draft letters to the Trustee at least five (5) days prior to the initial hearing on the Motion to Approve.

    - The draft letters indicated in the preceding paragraph shall be under the Trustee's letterhead. Once the Trustee approves and signs the draft letters, the Defendant shall send the letters to the insurers within five (5) business days. The Defendant shall promptly advise the Trustee of the insurers to whom letters were sent.

    - F4D shall send separate letters to the insurers in support of the letters executed by the Trustee. F4D shall attach the relevant assignment agreement to each letter.

    - All checks and other payments on liens from the insurers shall be remitted directly to the Trustee, not F4D, until the $20,000 Cap is reached. The Trustee is authorized to deposit checks made out to F4D. Any funds received by the Trustee from insurers shall be deposited into a segregated escrow account.

    - F4D waives its claim of a security interest in $20,000 of the amounts collected, i.e., the $20,000 Cap shall be unsecured property of the Bankruptcy Estate, with the following payment

Settlement and Mutual Release Agreement | Page 3



Final 080625

structure:

- 100% of the first $10,000 collected shall be deemed unsecured property of the Bankruptcy Estate, and applied against the $20,000 Cap.
- 50% of the next $20,000 collected shall be deemed unsecured property of the Bankruptcy Estate. When this step is completed, the $20,000 Cap is reached.
- All amounts collected after that shall be secured property of F4D.
- The Trustee shall remit F4D's portion directly to F4D, without further Court approval required. The Trustee shall remit F4D's portion within five (5) business days of receipt of the payments.
- By way of example:
  - First $11,000 in payments come in, then estate gets first $10,000, and 50% of the next $1,000. Trustee sweeps $10,500 to the estate's general account and sends $500 to F4D.
  - Next $9,000 in payments come in: 50/50 split. Trustee deposits the payments to the segregated account, sweeps $4,500 to the estate's general account, and sends $4,500 to F4D within five (5) business days of receipt.
  - Next $16,000 in payments come in: $20,000 Cap is hit. Trustee deposits the entire payments to the segregated account, sweeps $5,000 to the estate general account (so that the sum of all sweeps is $20,000), and sends the $11,000 remainder to F4D within five (5) business days of receipt.
  - All payments in excess of the $20,000 Cap will be sent to F4D within five (5) business days of receipt.

• The Trustee shall notify F4D of all payments received from insurers whether applied to the $20,000 Cap or not within five (5) days of receipt of such payments.

• Once the $20,000 Cap is reached: (i) the Trustee shall continue collecting any payments received from the insurers; (ii) any checks received by the Trustee will be forwarded to F4D within five (5) days of receipt; and (iii) all remaining liens/receivables/payments from insurers are Collateral of F4D loans, and the Bankruptcy Estate waives any claim to them.

Settlement and Mutual Release Agreement | Page 4

Final 080625

- If an insurer requests more information before releasing any funds:

    o The Trustee shall respond to any questions regarding the Receivership or the Bankruptcy Case

    o F4D shall solely be responsible for providing lien details and documents to the insurer (such as services performed, proof of assignment, billing codes, etc.)

- The Trustee is only responsible for reviewing, approving, and signing the letters to the insurers. If an insurer refuses to pay, the Trustee will not litigate any disputes with an insurer.

(b) *Dismissal of AP Case.* Within five calendar days after the Effective Date, the Trustee shall dismiss the AP Case, with prejudice.

(c) *Stay of Discovery and Case Progression.* All actions in the AP Case shall be stayed until the initial hearing on the Motion to Approve. The Trustee shall file a Notice of Settlement in the AP Case to provide notice of the pendency of the settlement.

(d) *Releases.* The Parties agree to the releases in Section 4 below.

4. **Mutual General Releases.**

(a) *General Release of Defendant.* On the Effective Date, the Trustee (inclusive of and on behalf of the Bankruptcy Estate) absolutely and forever releases, acquits and discharges Defendant from any and all potential or actual claims, causes of action, derivative claims, promises, covenants, agreements, contracts, representations, warranties, liens, debts, liabilities, damages, expenses, attorneys' fees, and costs, known or unknown, whether at law or in equity, which the Trustee now holds or has ever held against this Party (inclusive of the Receivership Estate claims held by the Bankruptcy Estate), and specifically including but not limited to all claims that were pled, or could have been pled, in the AP Case relating to the Transfer.

(b) *General Release of Bankruptcy Estate.* On the Effective Date, Defendant absolutely and forever releases, acquits and discharges the Trustee (inclusive of the Bankruptcy Estate and his counsel) from any and all potential or actual claims, causes of action, promises, covenants, agreements, contracts, representations, warranties, liens, debts, liabilities, damages, expenses, attorneys' fees, and costs, known or unknown, whether at law or in equity, which Defendant now holds against these released parties relating to the AP Case.

(c) *Enforcement of this Agreement.* Notwithstanding any of the above language, when they become effective, the releases found in the subsections above shall not: (i) release any term of this Agreement or any affirmative obligations of any Party contained herein; or (ii) release or limit any future ability or right of any Party to enforce this Agreement.

Settlement and Mutual Release Agreement | Page 5



Final 080625

      5.    **Attorneys' Fees**. With respect to all matters in the AP Case and the Bankruptcy Case, each Party shall bear its own attorneys' fees and costs.

      6.    **Governing Law; Jurisdiction**. This Agreement shall be governed by and construed in accordance with the laws of the State of Nevada. The U.S. Bankruptcy Court shall retain jurisdiction over performance of, enforcement of, or any disputes arising from or related to, this Agreement.

      7.    **Authority**. Each Party represents, warrants and covenants that the undersigned signatories for such Party have the full legal right, power and authority to bind that Party to this Agreement. Each of the Parties represent that they have received independent legal advice, or have had the opportunity to receive independent legal advice, with respect to the terms of and advisability of executing this Agreement. Each of the Parties acknowledge this Agreement is a compromise of a disputed claim and that payment of the Settlement Amount hereunder is not intended to be construed as an admission of any liability by either Party. It is agreed that by entering into this Agreement that Defendant does not admit any liability for any allegations asserted in the AP Case.

      8.    **Severability**. This Agreement shall be enforced to the maximum extent permitted by law. In the event that any one or more of the phrases, sentences, sections, or paragraphs contained in this Agreement shall be declared invalid or unenforceable by order, decree or judgment of any court having competent jurisdiction, or shall be or become invalid or unenforceable by virtue of any applicable law, the remainder of this Agreement shall be construed as if such phrases, sentences, sections, paragraphs or sections had not been inserted except when such construction shall constitute a substantial deviation from the general intent and purposes of the Parties as reflected in this Agreement.

      9.    **Entire Agreement**. This Agreement embodies the entire agreement and understanding by and between the Parties. This Agreement supersedes any and all prior or concurrent agreements, negotiations, understandings, statements, assurances, assumptions, premises, promises, agreements, discussions or representations, oral or written, relating to the foregoing matters, including oral agreements or representations, if any. This Agreement is a fully-integrated document, and no Party has made any representations upon which the other Party has relied that are not contained in this Agreement relating to the foregoing matters. No Party is relying on an unstated assumption, premise or condition not contained in this Agreement relating to the foregoing matters.

      10.    **No Modification, Waiver, or Amendment**. No modification, waiver, or amendment of any of the terms of this Agreement shall be valid unless in writing and executed by all Parties and approved by the Bankruptcy Court. No waiver of any breach hereof or default hereunder shall be deemed a waiver of any subsequent breach or default of the same or similar or dissimilar nature. No course of dealing or course of conduct shall be effective to amend, modify or change any provision of this Agreement.



Settlement and Mutual Release Agreement | Page 6

Final 080625

          11.    **Counterparts**. The Parties agree that this Agreement may be executed in counterparts, and may furthermore be executed by a Party on a scan of a counterpart executed by another Party. The Parties agree to cause their counsel to retain the originals of signed counterparts until 15 days after the Effective Date, after which they may be disposed of without notice.

          12.    **Successors**. This Agreement shall be binding upon and inure to the benefit of the Parties and to their successors-in-interest.

*[Remainder of Page Left Blank]*



Final 080625

13. **Further Assurances**. The Parties shall take, or cause to be taken, all actions and shall do, or cause to be done, all things necessary, proper or advisable to consummate each of the agreements, promises, covenants, and obligations of such Party under this Agreement.

# # # # #

***AGREED:***

**TRUSTEE:**

_____
Robert E. Atkinson, *in his capacity as plaintiff in the AP Case, and as Trustee of the Bankruptcy Estate of Heath Robert Wills and Patricia Anne Wills, Nevada bankruptcy case 23-13680-mkn*

8/6/25
_____
Date

**FUNDING4DOCTORS LLC:**

By: _____

Name: Robert J Marchant

Its: CEO

Date: 8-07-25